EVERS, J. T. C.
Plaintiff, United Jersey Mortgage Company (United), a New Jersey corporation engaged in making loans in connection with the commercial real estate market, contests a final determination for 1975 of the Director, Division of Taxation (Director), regarding its liability under the Financial Business Tax Law, N.J.S.A. 54:10B — 1 et seq. Specifically, United objects to the Director’s final determination of its net worth as of December 31, 1974. It alleges that a redetermination of its bad debt reserve by the Director was inconsistent with sound accounting principles which resulted in erroneously increasing its net worth and financial tax liability. Both parties moved for summary judgment.
*290 The Financial Business Tax Law, N.J.S.A. 54:10B-1 et seq., as originally enacted in L.1946, c. 174, §§ 1 et seq., imposed an annual excise tax on certain financial businesses at a rate of 0.75% of net worth. In 1970 the tax rate was increased to 1.5%. L.1970, c. 9, § 3. The Act was again amended in 1975 to remove financial businesses functioning in corporate form from its purview, L.1975, c. 171, §§ 2-3, and it subjected financial business corporations to the Corporation Business Tax Act in the following manner:
During each of the years 1976, 1977, 1978 and 1979, each financial business corporation shall pay as taxes under the provision of the Act to which this Act is a supplement, the greater of a sum equal to the amount of such financial business corporation fee pursuant to the “Financial Business Tax Law”, P.L. 1946, C. 174 (C. 54:10B-1, et seq.) in the calendar year 1975, or a sum equal to the total of the taxes payable by such financial business corporation pursuant to the “Corporation Business Tax Act”, P.L.1945, c. 162 (C. 54:10A-1 et seq.).
The instant controversy turns on the statutory provisions then in effect for the year in question, dealing with the definition of net worth. N.J.S.A. 54:10B-2(c)(l) then provided that net worth shall mean:
... the aggregate of the values disclosed by the books of the corporation for (1) issued and outstanding capital stock, (2) paid in or capital surplus, (3) earned surplus and undivided profits, (4) surplus reserves which can reasonably be expected to accrue to holders or owners of equitable shares, excluding reasonable valuation reserves and (5) the amount of all indebtedness owing directly or indirectly to holders of 10% or more of the aggregate outstanding shares of the taxpayer’s capital stock of all classes, as of the close of the year. [Emphasis supplied).
Accord, N.J.A.C. 18:8-2.3.
The Legislature in N.J.S.A. 54:10B-5 provided the Director with additional power pertaining to the determination of net worth. The Act provides:
If in the opinion of the Director, the taxpayer’s books do not disclose fair valuations the Director may require any additional information which may be necessary for a reasonable determination of the net worth which, in his opinion would reflect the fair value of the assets carried on the books of the taxpayer, in accordance with sound accounting principles, and such determination shall be used as net worth for the purposes of this Act.
Accord, N.J.A.C. 18:8-2.4.
On the basis of this statutory authority the Director adjusted the reserve for bad debts claimed by United on its 1975 New *291 Jersey Financial Business Tax return. United declared a bad debt reserve in the amount of $2,135,000 as of December 31, 1974. The Director adjusted this reserve because in his view the bad debt history of United did not support such a large reserve. It is uncontroverted that United had no actual bad debt write-offs for the years 1972 and 1973, but it did have a direct write-off of $49,324 in the year 1974. The Director imposed a deficiency against United in the amount of $22,219 plus interest and penalties, based on the disallowance of the claimed excessive bad debt reserve as reported on United’s books. This initial assessment was calculated on the basis that the bad debt reserve should have amounted to 1% of the accounts and notes receivable in light of United’s history of having no bad debt write-offs. This initial assessment was made pursuant to the principles set forth in R. H. Macy & Co. v. Director, 77 N.J.Super. 155, 185 A.2d 682 (App.Div.1962), aff’d o. b. 41 N.J. 3, 194 A.2d 457 (1963).
After several hearings the Director requested further information from United substantiating the bad debt reserve. The Director alleges United did not submit accurate information regarding the matter. In his final determination letter dated December 22, 1976 the Director revised the initial assessment and finally determined a bad debt reserve of $1,042,804, or slightly less than one-half of the original $2,135,000 claimed by United. Consequently the redetermined amount of deficiency, including interest and penalty, was $13,150.64. The Director’s theory as to the final determination of the bad debt reserve was allegedly based on the so-called “tax reserve concept” as applied in Motor Finance Corp. v. Director, 129 N.J.Super. 19, 322 A.2d 180 (App.Div.1974), certif. den. 66 N.J. 319, 331 A.2d 19 (1974).
The Director contends that the so-called tax reserve concept relates to an accounting technique “of reflecting the federal tax impact of reporting one way for book purposes and another way for federal income tax purposes.” The Director alleges that he applied the tax reserve concept in this case in order to reflect as an asset the federal tax benefits accruing to plaintiff as a result of reporting a higher figure for book purposes than for federal income tax purposes. The Director further maintains that the *292 allowance of the bad debt reserve in the amount of $1,042,804 is defensible in light of United’s bad debt history.
United concedes that the Director is not bound by the valuation of a bad debt reserve reported by a taxpayer in its books but argues that in redetermining any valuation of a reserve the Director must abide by sound accounting principles. According to United, the Director did not determine that the valuation reported was improper but, to the contrary, claims the Director ultimately accepted its reserve, thus obviating the need for a redetermination. United argues that if a redetermination was made, it could only have been made in accordance with sound accounting principles, and that even if the reduction was really a redetermination, it was not consistent with sound accounting principles.
United also contests the procedure employed by the Director, claiming that the final determination was arrived at by an arbitrary application of a tax benefit theory that has no basis in the Financial Business Tax Law. The crux of its argument is that the Director included in the taxpayer’s net worth approximately one-half of the reported reserve. Later, according to United, the Director attempted to support his arbitrary method by claiming that he reduced the reserve on the basis of future tax benefits which would allegedly accrue to United as a result of deducting from federally taxable income the losses which would occur when the loans were actually written off. Therefore, United contends that the Director actually accepted its valuation of the bad debt reserve. United claims the Division’s auditor stated that its standard practice for revaluation of reported bad debt reserve was based on R. H. Macy & Co. v. Director, supra. That practice allows a reserve based on the taxpayer’s experience as to the percentage of debts actually written off, rounded to the nearest one-half of 1%, plus an additional one-half of 1%. United argues that Macy simply was not followed with respect to its bad debt reserve but instead the Director applied the tax benefit analysis to bolster his arbitrary reduction of United’s reserve. United contends that the Di *293 rector’s use of Motor Finance Corp. v. Director, supra, is unwarranted under these circumstances.
United maintains that proper accounting procedures for treatment of bad debts is to first recognize losses currently by estimating the percentage of outstanding debts which are uncollectable and secondly, to defer recognition of losses until the accounts are actually written off. It also notes that treatment of bad debts by organizations such as United which engage in a banking business is governed by federal regulation. United claims that the Federal Reserve Board actually advised it that the original $2,135,000 bad debt reserve was insufficient under the circumstances. Furthermore, it contends that its independent auditors advised that the reserve was proper in order to certify the fairness of United’s financial statements.
The final ground urged by United in support of its motion for summary judgment is of a constitutional nature. It contends that since the invalid final determination as to the 1975 tax year establishes a minimum tax in subsequent years pursuant to N.J.S.A. 54:10A-^40, it is being taxed in subsequent years at that minimum regardless of its conceivably lower net worth, in violation of its due process and equal protection rights. The court finds that it cannot decide the constitutional question since the issue was not set forth in either the complaint or pretrial order. R. 4:24-1. The issue is therefore not properly before this court at this juncture. Counsel for United is, of course, free to seek an appropriate amendment.
The law is well settled that summary judgment shall be granted only in cases where there is no genuine issue as to any material fact. R. 4:46 — 2. See, also, Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 110 A.2d 24 (1954). Regardless of how the parties frame the issues in their supporting briefs, the root controversy herein concerns what is, in fact, sound accounting principles with respect to the Financial Business Tax Act. The pertinent case law clearly demonstrates that in order for the trial court to determine what are sound accounting principles, there is a need for expert testimony under the circumstances here present. It is obviously a factual question.
*294 In Macy the court was faced with a controversy concerning an analagous provision in the Corporate Business Tax Law which defined net worth for the purposes of the corporation business tax. Taxpayer disputed the Director’s substitution of FIFO [1] valuation in place of LIFO [2] valuation with respect to inventory values. The taxpayer also disputed the downward revision of its bad debt reserve, and further disputed the disallowance of a deduction for a debt owing from a wholly-owned subsidiary — Garden State Plaza Corporation. The issue, according to the Appellate Division, was whether the Director employed sound accounting principles in his redetermination. In order for the trial court to determine whether sound accounting principles were used, expert testimony is required. It is clear that the issue of sound accounting principles was factual and not simply a legal question. The parties herein contend that Macy supports their respective positions. The Director contends Macy holds that bad debt history is the criterion used in most cases. United disagrees and contends that Macy does not stand for the proposition that bad debt history is the sole criterion for determining the valuation of a bad debt reserve. The court, in Macy, held that, while bad debt history is not the sole dispositive criterion in such cases, it is often the best test of the fair valuation of bad debt reserves. It did state that other concurring factors play an important role in determining what sound accounting principles would call a reasonable bad debt reserve. Consequently the resolution of the issues presented herein requires the court to not only address the legal questions but to consider any other concurring factors which may be present in the circumstances surrounding this matter.
Furthermore, Macy clearly stands for the proposition that, in resolving the issue of sound accounting principles, a trial court may not simply take notice of what sound accounting principles are within the meaning of the statute. There must be *295 expert testimony on that question in order to fairly resolve the issue. See, also, Brookchester, Inc. v. Director, 113 N.J.Super. 570, 274 A.2d 608 (App.Div.1971).
The actions of the Director must comport with sound accounting principles in the sense that the accounting profession would understand that term. American Can Co. v. Director, 87 N.J.Super. 1, 207 A.2d 699 (App.Div.1965). Yet, in some circumstances, conventional accounting practices are too conservative for purposes of valuation of the net worth of a taxpayer. See Brookchester, Inc. v. Director, supra, and Motor Finance Corp. v. Director, supra. Thus, the Director can properly conclude in certain cases that the taxpayer’s books do not disclose the fair valuation of the components of net worth under accounting principles which are sound in light of the tax statute. United States Steel Corp. v. Director, 38 N.J. 533, 544, 186 A.2d 266 (1962).
The foregoing cases stand for several propositions. First, the Director is entitled to depart from the corporate books if the books do not reflect the fair valuation of the assets. This is so even though sound accounting principles may ordinarily demand that the assets be so reported. However, the Director cannot arbitrarily fix a value for purposes of net worth. His determination must still have some foundation in generally accepted accounting principles, but those principles (which are often quite conservative in the recording of corporate assets for balance sheet purposes) can be adandoned if they do not reflect the fair valuation of the assets with respect to the particular tax statute.
Secondly, the cases also demonstrate that issues concerning sound accounting principles are not appropriately disposed of by way of summary judgment. Expert accounting testimony is necessary in order to fix the standard of sound accounting principles.
Thirdly, the cases, and particularly Macy, hold that past history is often, but not always, conclusive as to the net worth of the business. The court, in Macy, recognized that it is but one *296 factor in a case where extraneous circumstances do come to bear on what sound accounting principles would demand of a going concern. Such circumstances, of course, must be shown by the evidence adduced at the time of trial.
The cross-motions for summary judgment are denied.

First in — first out.

Last in — first out.