129 N.J. Super. 19 (1974)
322 A.2d 180
MOTOR FINANCE CORPORATION, PETITIONER-RESPONDENT,
v.
DIRECTOR, DIVISION OF TAXATION, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 21, 1974.
Decided June 10, 1974.
*21 Before Judges HANDLER, MEANOR and KOLE.
Mr. Harry Haushalter, Deputy Attorney General, argued the cause for appellant (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Stephen Skillman, First Assistant Attorney General, of counsel).
Mr. Joseph Lunin argued the cause for respondent (Messrs. Pitney, Hardin & Kipp, attorneys).
The opinion of the court was delivered by HANDLER, J.A.D.
Petitioner Motor Finance Corporation paid its New Jersey corporation business tax for the years 1962 to 1967, inclusive, and then filed a timely claim for refunds pursuant to N.J.S.A. 54:49-14. The bases for the refund claims were: (1) liability was computed by including in the net worth the excess of market value of marketable securities over the book value thereof; (2) in determining that excess, the anticipated capital gains tax attributable thereto was not recognized, and (3) in determining the mean market value of such securities, no recognition was given to "blockage" resulting from the extent of petitioner's holdings of said securities. The Director of the Division of Taxation denied the refund claims. Petitioner then appealed *22 to the Division of Tax Appeals which determined that the Director was entitled to revalue marketable securities to reflect market values but that such valuation must recognize related future tax liabilities and the "blockage" effect on the market value of the securities.
The Director filed a notice of appeal contesting the determination as to the method for computing fair market value of petitioner's securities. Petitioner cross-appealed, challenging the judgment that the Director had the power to value marketable securities according to their listed market values rather than book value.
We treat first the issue of whether the Director of the Division of Taxation has the power to revalue marketable securities by disregarding the cost or book value thereof and utilizing instead their listed stock market prices. The language of the Corporation Business Tax Act, N.J.S.A. 54: 10A-1 et seq., is the primary reference point. The critical provision is N.J.S.A. 54:10A-4(d), viz:
"Net worth" shall mean the aggregate of the values disclosed by the books of the corporation. * * *
If in the opinion of the commissioner [i.e., Director], the corporation's books do not disclose fair valuations the commissioner may make a reasonable determination of the net worth which, in his opinion, would reflect the fair value of the assets * * * carried on the books of the corporation, in accordance with sound accounting principles, and such determination shall be used as net worth for the purpose of this act. [Emphasis supplied]
It has often been underscored that the tax imposed via the Corporation Business Tax Act is not an ad valorem property tax or a disguise for a tax upon underlying assets. United States Steel Corp. v. Director of Div. of Tax., 38 N.J. 533 (1962); Werner Machine Co. v. Director of Div. of Tax., 17 N.J. 121 (1954), aff'd 350 U.S. 813, 76 S.Ct. 46, 100 L.Ed. 729 (1955). It "is an excise (privilege) impost rather than a property tax." F.W. Woolworth Co. v. Director of Div. of Tax., 45 N.J. 466, 473 (1965). While the "excise tax may gather the hue of a property tax * * * it is *23 the franchise to do local business that is being valued rather than any specific piece of property devoted to it." Household Finance Corp. v. Director of Div. of Tax., 36 N.J. 353, 358, app. dism. 371 U.S. 13, 83 S.Ct. 41, 9 L.Ed.2d 49 (1962) (construing the analogous Financial Business Tax Law, N.J.S.A. 54:10B-1 et seq.).
Subject to standards of accounting, the Director has the statutory authority to revalue the various components of net worth in order to reach fair value. F.W. Woolworth Co. v. Director of Div. of Tax., supra 45 N.J. at 473. The Director is not bound by a company's bookkeeping; he may conclude that corporate books do not disclose the fair valuation of the elements of net worth under accounting principles which are sound for purposes of the tax statute. United States Steel Corp. v. Director of Div. of Tax., supra, 38 N.J. at 541. R.H. Macy & Co. Inc. v. Director of Div. of Tax., 77 N.J. Super. 155, 164 (App. Div 1962), aff'd 41 N.J. 3 (1963).
In Brookchester Inc. v. Director of Div. of Tax., 113 N.J. Super. 570 (App. Div.), cert. den. 58 N.J. 392 (1971), the court upheld the Director's revaluation of certain real estate assets which had been carried on the taxpayer's books at depreciated cost. The values used by the Director were the unpaid balances of the mortgages on the properties. The court noted that such mortgage balances exceeded depreciated costs and were therefore an "indicia of minimum fair values" and were required by sound accounting to be disclosed on the books of the taxpayer. The revaluation of these underlying assets in this manner was itself "sound and administratively feasible." Id. 113 N.J. Super. at 575.
In the present matter it is rather clear that the book values or costs of petitioner's marketable securities, while in accordance with conventional or orthodox accounting practices, do not approximate fair value. Thus, to the limited end of evaluating corporate net worth for the purpose of admeasuring the franchise for doing business in the state, *24 the Director properly concluded that the petitioner's own books were not sufficient.
It may be observed that in other instances where the Director has revalued assets by rejecting book or cost values, he has used different values which were otherwise reflected in the books or financial records of the taxpayer itself. E.g., Brookchester, Inc. v. Director of Div. of Tax., supra; R.H. Macy & Co. Inc. v. Director of Div. of Tax., supra. While, in this case, the Director has not obtained corrected values for the listed securities by resort to other information disclosed in the taxpayer's own books or records, but rather by reference to an outside source, i.e., the stock market, this technique is nonetheless administratively feasible and simple to apply.
Any remaining doubts as to the statutory power in the Director to revalue marketable securities for corporate franchise tax purposes are effectively dissipated by the legislative history of the Corporation Business Tax Act as well as the consistent and continuing administrative application of the statute. Thus, at the inception of this corporation franchise tax, administrative adjustments to net worth valuations based upon increases to the market values of stocks and securities were explicitly recognized in the Second Report of The Commission on State Tax Policy, at 84-86 (March 24, 1947). Additionally, the current regulations of the Director provide that the fair value of regularly traded stocks and securities is the "mean between the highest and lowest selling prices." N.J.A.C. 18:7-6.7(a). This administrative construction is long-standing and is evidential of the intent of the Legislature. Cf. J.B. Williams v. Glaser, 114 N.J. Super. 156, 160 (App. Div. 1971).
The next issue is whether the Director, by increasing the book value of marketable securities by attributing stock market selling prices as their fair value, is required to recognize an off-setting reserve for future or anticipated taxes.
It must be conceded that in an area so highly specialized as accounting for particular purposes substantial *25 deference must be accorded the testimony of experts. Expert testimony on the question of what constitutes sound accounting principles in the revaluation of net worth assets carried on the books of a corporation is extremely important. Brookchester Inc. v. Director of Div. of Tax., supra 113 N.J. Super. at 575; American Can Co. v. Director of Div. of Tax., 87 N.J. Super. 1, 4-7 (App. Div.), certif. den. 44 N.J. 587 (1965). Here the testimony of petitioner's experts in support of its position that the upward revaluation of its marketable securities entailed an off-setting reserve for taxes was persuasive and uncontradicted. The Division was quite correct in relying upon that testimony and basing its conclusion thereon.
The Director nevertheless argues that "[t]he going concern concept * * * requires that marketable securities be valued for net worth purposes based on their present value without reduction for hypothetical capital gains expenses to be incurred only when the securities are actually sold." It is by no means indisputable that a "going concern" approach to valuation would justify the disallowance of a reserve for additional taxes where there has been a concomitant increase in the value of assets. In fact, the disallowance of such a reserve for future taxes might be more consonant with a financial statement structured for purposes of a liquidation or the sale of assets, rather than one designed to depict the status of the corporation as a continuing concern for purposes of assessing its franchise or privilege to conduct its business in the next ensuing year. See American Can Co. v. Director of Div. of Tax., supra 87 N.J. Super. at 10-11.
The recognition of a theoretical potential tax liability because of an assumed increase in corporate assets is not improper, as suggested by the Director, because the tax obligation is hypothetical in the sense that its occurrence can be controlled or timed by the taxpayer itself. Petitioner's expert concluded that the reserve for increased taxes was required. He relied in part on Accounting Principles Board Opinion No. 11, "Accounting for Income Taxes" at 6579-94 *26 (December 1967), which was said to show that the increased valuation of marketable securities by the Director would be more properly categorized as a "timing" difference. Such a "timing" difference in his opinion required the establishment of an off-setting reserve for future taxes.
We see no sound reason to disturb the conclusion of the Division, based in part upon this expert testimony, because the Director now argues on this appeal that other authority, Accounting Principles Board Opinions Nos. 23, "Accounting for Income Taxes  Special Areas," ¶¶ 7-14 at 6715-17 (April 1972), and 24, "Accounting for Income Taxes," at 6731-34 (April 1972), published after the hearing below and which was not part of the record, would imply that the differences were "permanent" rather than "timing" and, therefore, would not justify the creation of a corresponding reserve for future taxes. It is not evident that these publications are clearly or directly applicable and they would not, therefore, be conclusive. Moreover, the Director did not in any reasonable timely fashion at the administrative level seek to request a rehearing or a reopener after the determination below in order to supplement the record.
Aside from these considerations, it has been recognized that consistency is as important as the theoretical contingency of the tax liability. American Can Co. v. Director of Div. of Tax., supra 87 N.J. Super. at 12-13. According to the experts, the necessity for establishing such a reserve for future taxes stems from the Director's decision to depart from the books of the corporation. In an analogous case involving the revaluation of a taxpayer's inventory it was observed that "[s]ince the Director has departed from actual book inventory for present franchise tax purposes, he must assume, for such purposes, the hypothetical state of facts in relation to the taxpayer's income tax liability which sound accounting principles, according to the evidence in this case, would require to be reflected on the taxpayer's books concomitantly with a substitution of [quoted market prices] for [book cost] inventory figures." American Radiator & Standard *27 Sanitary Corp. v. Director of Div. of Tax., 104 N.J. Super. 322, 323-324 (App. Div. 1969).
The final issue is whether the Division properly concluded that the "blockage" principle should be applied in determining the market value of the assets. The securities involved were approximately 130,000 shares of the Fidelity Union Trust Co., or 10% of all of the outstanding shares. Petitioner offered the testimony of an expert who was of the view that, because of the extent of petitioner's holdings of this particular bank stock, these securities would have a particular average price per share for each of the tax years involved, a price per share less than that ascribed by the Director.
We agree with the Division's findings and conclusions on this point for essentially the reasons advanced. This result, moreover, would seem to comport with the Director's own regulations which provide for a different standard of valuation for marketable securities where quoted stock market prices are not appropriate. N.J.A.C. 18:7-6.7(c) provides that
if by reason of the character or extent of the taxpayer's investment or for any other reason such prices are not truly indicative of value * * * the fair value is ascertained * * * [i]n the case of shares of stock, on the basis of the issuing corporation's net worth, earning power, book value, dividends paid, and all other relevant factors * * *.
Petitioner's expert, whose testimony was not rebutted, recognized the influence which the quantity of shares held by petitioner exerted upon their market value and considered also the dividend history, rating and earnings of the stocks. This testimony appears to be consonant with the valuation approach contemplated by the Director's administrative guidelines.
Affirmed.