CONLEY, J.T.C.
This case involves the issue of what constitutes “the books of the corporation” for purposes of computing a taxpayer’s net worth under the Corporation Business Tax Act (1945), N.J.S.A. 54:10A-1 et seq. Plaintiff challenges an assessment of additional taxes under the act by the Director, who made certain recomputations of plaintiff’s 1975 and 1976 returns following his audit for those years. The parties have stipulated that the relevant adjustments made by the Director were on plaintiff’s schedules 0 (deductions for subsidiaries) and Q (subsidiary investment exclusion) and that the adjustments were of the valuation of plaintiff’s investments in subsidiaries. These adjustments caused plaintiff’s “net worth” to be increased accord *261 ingly. The essence of the dispute is that plaintiff contends that the term “books of the corporation” is restricted in meaning to a taxpayer’s general ledger accounts, whereas the Director contends that the term includes various financial statements certified to and published by a taxpayer. These contrary positions are accentuated in the present case because of different results obtained by use of the cost and equity methods of accounting. In computing its corporation business tax liability for the years in question [1] plaintiff reported the value of its investments in subsidiaries on the basis of the cost method of accounting as derived from existing corporate ledgers and as reported for federal income tax purposes. However, the Director is his recomputations of plaintiff’s tax liability used the equity method of accounting as derived from plaintiff’s published financial statements. Use of the equity method produced a higher value for subsidiary investments and would change plaintiff’s tax liability from $42,466 and $55,252, as originally reported for 1975 and 1976, respectively, to $61,208 and $84,810, exclusive of interest and other considerations not relevant to this issue.
The parties have stipulated for purposes of this case that the cost method of accounting as used by plaintiff is an accounting procedure whereby a parent corporation’s investment in a subsidiary is initially reported at cost and that amount is adjusted subsequent to the date of investment only for the amount of any dividends from the subsidiary in excess of cumulative earnings of the subsidiary. On the other hand, the equity method of accounting is an accounting procedure whereby an investment in a subsidiary is initially reported by the parent corporation at its cost and that amount is thereafter adjusted to recognize the subsequent accrued earnings or losses of the subsidiary.
*262 During the years 1975 and 1976 plaintiff maintained its general ledger of accounts at its principal place of business on the cost method of accounting to reflect its investments in subsidiaries. Figures from plaintiff’s general ledger accounts were not published, other than in conjunction with federal and state tax returns, and they were not otherwise released or distributed to the public, stockholders or creditors for any purpose. The valuation of plaintiff’s investments in subsidiaries as reflected in its general ledger accounts was not certified by a certified public accounting firm but the valuation was examined by the accounting firm in connection with its certification of audited financial statements of plaintiff prepared under the equity method. During the same years, plaintiff filed Forms 10-K with the Securities and Exchange Commission in accordance with federal law. The Forms 10-K included consolidated financial statements of plaintiff Cities Service Company and its subsidiaries, and the parent-only financial statements of plaintiff. Insofar as the term is used in this discussion, “parent-only financial statements” means the financial statements of a parent company which are not prepared on a consolidated basis to report the financial position and results of operations of a parent company and its subsidiaries as an economic entity, but report only the financial position and results of operations of the parent company itself as the reporting entity. Accepted accounting standards (Accounting Principles Board Opinion No. 18) and Securities and Exchange Commission rules in effect for the years 1975 and 1976 both required that the published parent-only financial statements of Cities Service Company report investments in subsidiaries under the equity method of accounting. These published financial statements, along with consolidated financial statements of plaintiff published with them, were audited and certified by a recognized certified public accounting firm. These published financial statements were also reflected in plaintiff’s annual reports for 1975 and 1976 and in prospectuses released to the public to solicit borrowings by plaintiff.
As a result of his audit the Director determined that plaintiff’s Form 10-K statements more accurately reflected the fair *263 valuation of plaintiffs subsidiaries than did plaintiffs journals and ledgers. He adjusted these values accordingly, as discussed above. Plaintiff contends that the Director exceeded his statutory authority in making his adjustments because the language of N.J.S.A. 54:10A-4(d) “does not permit the Director to deviate from the corporation’s books with respect to the value of subsidiary investments.”
The Corporation Business Tax Act imposes a franchise tax on every nonexempt domestic or foreign corporation “for the privilege of having or exercising its corporate franchise” in New Jersey or “for the privilege of doing business, employing or owning capital or property, or maintaining an office” in New Jersey. N.J.S.A. 54:10A-2. The amount of the franchise tax which is assessed annually to the taxpayer is computed by adding together prescribed percentages of allocated net worth and allocated net income. N.J.S.A. 54:10A-4(d) and (k) and N.J.S.A. 54:10A-5. The present matter involves only the net worth aspect of the tax. “Net worth” is defined in the act, in pertinent part, as follows:
“Net worth” shall mean the aggregate of the values disclosed by the books of the corporation for (1) issued and outstanding capital stock, (2) paid-in or capital surplus, (3) earned surplus and undivided profits, (4) surplus reserves which can reasonably be expected to accrue to holders or owners of equitable shares, not including reasonable valuation reserves, such as reserves for depreciation or obsolescence or depletion, and (5) the amount of all indebtedness owing directly or indirectly to holders of 10% or more of the aggregate outstanding shares of the taxpayer’s capital stock of all classes, as of the close of a calendar or fiscal year. [N.J.S.A. 54:10A-4(d); emphasis supplied]
The crucial words in the context of this case are “the books of the corporation.” The same statutory section also contains the following provision:
If in the opinion of the [Director], the corporation’s books do not disclose fair valuations the [Director] may make a reasonable determination of the net worth which, in his opinion, would reflect the fair value of the assets, exclusive of subsidiary investments as defined aforesaid, carried on the books of the corporation, in accordance with sound accounting principles, and such determination shall be used as net worth for the purpose of this act. [Emphasis supplied]
Plaintiff also argues that the Director’s own regulations expressly preclude the Director from revaluing a parent corporation’s subsidiary investments. The administrative provisions relied on by plaintiff are as follows:

*264
Parent must report book value of subsidiary corporation

(a) For any subsidiaries meeting the definition of a subsidiary under subsections (a) and (b) of Section 4.11 (Subsidiary corporation, varying definitions) of this chapter, the parent corporation’s book value for that subsidiary’s stock must be reported in computing the parent corporation’s net worth tax liability under the Act.
(b) No revaluation of the parent corporation's net worth is permitted for the stock of these subsidiaries. [N.J.S.A. 18:7 — 4.14; emphasis supplied]

Valuation of subsidiaries

(a) The investment by a taxpayer in the stock of a corporation meeting the definition of subsidiary under Section 4.11 (Subsidiary corporation; varying definitions) of this Chapter, requires the taxpayer to report the book value of his investment in computing the parent company’s net worth tax liability under the Act.
1. No revaluation of the parent company’s net worth is permitted for these stock investments.
2. For valuation of other stock investments, see Section 6.7 (Valuation of securities; how computed) of this Chapter. [N.J.S.A. 18:7-6.4; emphasis supplied]
Plaintiff presented two expert witnesses in support of its position that “books of the corporation” should be construed to mean only a taxpayer’s general ledger accounts. The first witness was Dr. James R. Boatsman, professor of accounting at the Oklahoma State University School of Accounting. Dr. Boatsman conceded that the statutory term “books” is ambiguous. In his view the term may be used to refer either to the physical act of recording transactions in journals and ledgers, as in “bookkeeping,” or to the preparation of financial statements in accordance with applicable regulations, as in “financial reporting.” The appropriate meaning of the term, according to Dr. Boatsman, depends on the context in which it is used. The essential inquiry to Dr. Boatsman was whether with respect to a parent-subsidiary relationship the calculation of a parent corporation’s net worth for purposes of the corporation business tax should be based on the cost or the equity method of accounting. It was his opinion that the cost basis should be used to calculate a parent company’s investment in its subsidiaries because in that situation the cost method produces less double counting of net assets than does the equity method. Dr. Boatsman characterized use of the equity method as unfair because it discriminated *265 against a parent corporation with a separate subsidiary compared to a parent that acquired a subsidiary and then merged the two entities. He said the latter would reflect no double counting of net assets because there would be only one balance sheet for one legal entity. Dr. Boatsman suggested that a nondiscriminatory system would be to raise the rate of taxation for all taxpayers “and allow any nonmerging parent to exclude the full amount of its ‘Investment in subsidiary’ from taxable net assets.”
Plaintiff’s second expert witness was Dr. Richard P. Brief, professor of business statistics and accounting at New York University. Dr. Brief’s opinion was twofold: first, that the equity method of accounting and consolidated returns for parent and subsidiaries are equivalent from the standpoint of income and net worth calculations; and second, that the adjustments made by the Director to plaintiff’s values for its subsidiaries were invalid because by using the equity method of accounting the Director had effectuated a consolidated basis of reporting, expressly prohibited by the Director’s own regulation (N.J.A.C. 18:7-11.15).
The Director concedes that the act requires him to use the value of a taxpayer’s subsidiary investments as carried on the books of the corporation taxpayer when determining the corporation’s net worth. However, the Director contends that he complied with the statute by adjusting the value of plaintiff’s subsidiary investments to reflect the value of these investments as set forth in plaintiff’s Form 10-K statements. The Director argues that the Form 10-K statements, including the certified financial statements, constitute “the books of the corporation” within the intent of N.J.S.A. 54:10A-4(d).
Although our courts have not construed the specific phrase “books of the corporation” as used in N.J.S.A. 54:10A-4(d), they have in a number of cases interpreted the general provision permitting the Director to revalue a taxpayer’s net worth. The general principles set forth in these cases have been concisely summarized as follows:
*266 Subject to standards of accounting, the Director has the statutory authority to revalue the various components of net worth in order to reach fair value [citation omitted]. The Director is not bound by a company’s bookkeeping; he may conclude that corporate books do not disclose the fair valuation of the elements of net worth under accounting principles which are sound for purposes of the tax statute. [Motor Finance Corp. v. Taxation Div. Director, 129 N.J.Super. 19, 23, 322 A.2d 180 (App.Div.1974), certif. den. 66 N.J. 319, 331 A.2d 19 (1974)]
The Director in the Motor Finance case had valued marketable securities held by the corporate taxpayer at stock market prices instead of at cost or at the book value of the securities as set forth by the taxpayer on its tax returns. The court noted that
... the book values or costs of petitioner’s marketable securities, while in accordance with conventional or orthodox accounting practices, do not approximate fair value. Thus, to the limited end of evaluating corporate net worth for the purpose of admeasuring the franchise for doing business in the state, the Director properly concluded that the petitioner’s own books were not sufficient. [Id. 129 N.J.Super. at 23-24, 322 A.2d 180]
In finding that the Director had the authority to redetermine net worth based on factors outside of the corporation’s books or records the court stated that
It may be observed that in other instances where the Director has revalued assets by rejecting book or cost values, he has used different values which were otherwise reflected in the books or financial records of the taxpayer itself [citations omitted]. While, in this case, the Director has not obtained corrected values for the listed securities by resort to other information disclosed in the taxpayer’s own books or records, but rather by reference to an outside source, i.e., the stock market, this technique is nonetheless administratively feasible and simple to apply. [Id.]
There was no need in the present case for the Director to resort to an outside source such as the stock market when he adjusted the value of plaintiff’s subsidiaries. The Director used financial statements prepared and published by plaintiff itself. Plaintiff, of course, does not challenge the accuracy of the Director’s figures and concedes that the Director’s methodology was in accordance with sound accounting principles. However, plaintiff contends that even though the value of its subsidiaries may be computed differently from the same data base under two acceptable accounting methods the Director cannot be free to choose that value he considers more reflective of the value of the corporate franchise.
*267 Plaintiff’s position is too rigid. I conclude that the term “books of the corporation” as used in N.J.S.A. 54:10A- 4(d) includes financial statements prepared in accordance with applicable regulations in the sense encompassed by the term “financial reporting” used by plaintiff’s witness Dr. Boatsman. The more restrictive definition referring to the physical act of recording transactions in journals and ledgers, as in “bookkeeping,” could in many instances be clearly inadequate. See U.S. Steel Corp. v. Taxation Div. Director, 38 N.J. 533, 186 A.2d 266 (1962); Motor Finance Corp. v. Taxation Div. Director, supra; Brookchester, Inc. v. Taxation Div. Director, 113 N.J.Super. 570, 274 A.2d 608 (App.Div.1971), certif. den. 58 N.J. 392, 277 A.2d 884 (1971); American Can Co. v. Taxation Div. Director, 87 N.J.Super. 1, 207 A.2d 699 (App.Div.1965), certif. den. 44 N.J. 587, 210 A.2d 629 (1965); R.H. Macy & Co. v. Taxation Div. Director, 77 N.J.Super. 155, 185 A.2d 682 (App.Div.1962), aff’d o.b. 41 N.J. 3, 194 A.2d 457 (1963). Cf. United Jersey Mortgage Co. v. Taxation Div. Director, 3 N.J.Tax 287 (Tax Ct.1981) (involving the analogous Financial Business Tax Law, N.J.S.A. 54:10B-1 et seq.). It is not difficult to imagine, for example, that a taxpayer might keep its “books” (in the restrictive sense) in a way that would minimize its tax liability. Plaintiff itself cites one commentator, formerly President of the American Institute of Certified Public Accountants, who made this observation:
The income tax, for example, has spawned a whole new set of dilemmas. Its influence is powerful but not always healthy. Where permissible alternatives exist, business management is naturally inclined to adopt whichever accounting methods will result in the least tax. [M.G. Eaton, “Financial Reporting in a Changing Society,” 104 The Journal of Accountancy, at 25]
It almost goes without saying that the Director must have flexibility, within the bounds of generally accepted accounting principles, to review a taxpayer’s data base in order to evaluate the taxpayer’s report of its financial condition. To construe the statutory term “books” in the limited manner sought by plaintiff would render the Director’s audit function meaningless. Surely the Legislature did not intend to give all the advantages to those who log entries in corporate ledgers.
*268 For the reasons just mentioned I hold that the Director’s adjustments of plaintiff’s net worth in the present case were made from the corporation’s books. Accordingly, there is no need to deal with plaintiff’s contention that the statute precludes the Director from using data outside a taxpayer’s books to revalue “subsidiary investments.” Nonetheless, although plaintiff recognizes that the equity method of accounting used by the Director is a sound method of accounting, plaintiff argues that use of the equity method is inappropriate in this case. Plaintiff argues that use of the equity method is (a) unfair because it results in excessive double-counting of assets, and (b) invalid because it effects a consolidation of plaintiff and subsidiaries in contravention of the Director’s own regulation.
It is indeed true that the equity method of accounting results in more double-counting of assets than the cost method in a situation involving a parent corporation and its subsidiaries. This was explained quite clearly by Dr. Boatsman. On the other hand, there was no proof in this case of the amount of any double-counting of assets that occurred in connection with the Director’s net worth adjustment involving plaintiff’s investments in its subsidiaries. In fact, the corporation business tax provides a taxpayer with a considerable measure of protection against just such double counting of assets. The definition of net worth in N.J.S.A. 54:10A-4(d) states expressly that net worth
... shall be reduced by 50% of the amount disclosed by the books of the corporation for investment in the capital stock of one or more subsidiaries....
Plaintiff benefited from this automatic 50% reduction in its subsidiary investments. Furthermore, N.J.S.A. 54:10A-9 provided plaintiff another deduction of 50% of the taxable net worth of any subsidiaries of which it owned at least 80% of the stock if those subsidiaries also paid corporation business tax to New Jersey. Plaintiff’s expert, Dr. Brief, while professing a lack of time to fully address the issue, made essentially the same point in his report:
Given the fact that there are two separate “50 percent adjustments” for subsidiary companies in the computation of net worth for tax purposes, it is difficult to determine the additional double counting, i.e., the additional taxes *269 paid twice on the assets of a subsidiary, due to the use of the equity method. Although an exact answer to this question could be obtained by detailed empirical study of the effect of the specific tax regulations on the alternative methods of reporting, it is plain that the summing of the net worths of parent company and subsidiaries, where the parent company uses the equity method to account for subsidiaries, will in general lead to more double counting than if the net worth of the parent were based on the cost method.
I am unable to find from the record of this case that the Director’s use of the equity method of accounting was unfair to plaintiff with regard to the valuation of its investments in subsidiaries. Even if plaintiff had established the existence of some double taxation, there would not necessarily be any inherent defect in the Director’s methodology. As the court said in the Motor Finance case:
It has often been underscored that the tax imposed via the Corporation Business Tax Act is not an ad valorem property tax or a disguise for a tax upon underlying assets. United States Steel Corp. v. Director of Div. of Tax., 38 N.J. 533 [186 A.2d 266] (1962); Werner Machine Co. v. Director of Div. of Tax., 17 N.J. 121 [110 A.2d 89] (1954), aff’d 350 U.S. 813, 76 S.Ct. 46, 100 L.Ed. 729 (1955). It “is an excise (privilege) impost rather than a property tax.” F. W. Woolworth Co. v. Director of Div. of Tax., 45 N.J. 466, 473 [213 A.2d 1] (1965). While the “excise tax may gather the hue of a property tax * * * it is the franchise to do local business that is being valued rather than any specific piece of property devoted to it.” Household Finance Corp. v. Director of Div. of Tax., 36 N.J. 353, 358 [177 A.2d 738], app. dism. 371 U.S. 13, 83 S.Ct. 41, 9 L.Ed.2d 49 (1962) (construing the analogous Financial Business Tax Law, N.J.S.A. 54:10B-1 et seq.). [129 N.J.Super. at 22-23, 322 A.2d 180]
Accord, R.H. Macy & Co. v. Taxation Div. Director, supra, 77 N.J.Super. at 174, 185 A.2d 682.
Since the valuation of a franchise to do business is even less precise than the valuation of property for ad valorem property tax purposes, this court gives substantial deference to the Director’s expert administrative judgment in the absence of proof of arbitrary action by him. Cf. R.H. Macy & Co. v. Taxation Div. Director, supra, 77 N.J.Super. at 169-170, 185 A.2d 682. There was no arbitrariness in this case because the Director used plaintiff’s own published financial records and he followed sound accounting principles in making adjustments to plaintiff’s net worth.
Plaintiff argues that the Director’s action, even if not arbitrary or unfair, was still invalid because it effected a consolidat *270 ed return which is prohibited by administrative regulation. In fact, the equity method is not a valid substitute for consolidation and differs from it at least in the details reported in financial statements. Accounting Principles Board Opinion No. 18, pars. 14 and 19. A major difference in the present case is that the Director used the equity method only with regard to plaintiff’s net worth tax base; he made no adjustment of plaintiff’s net income tax base and did not consider income of plaintiff’s subsidiaries. It is therefore inaccurate to equate the Director’s action with full consolidation of plaintiff and its subsidiaries. However, plaintiff’s point has no merit for a more basic reason. The Director’s regulation prohibiting the filing of consolidated returns was presumably intended to preclude tax avoidance by corporations that exercise their franchise in New Jersey. It was certainly not intended to limit the Director’s ability to make an appropriate determination of a taxpayer’s net worth. The Second Report of the Commission on State Tax Policy (1947) initially considered a proposal that corporations be permitted to file consolidated returns. The Second Report, as quoted by the Supreme Court in the United States Steel case, gave the following reason for rejecting the proposal:
Use of consolidated returns under the Corporation Business Tax Act would have the effect of grouping two or more corporations and assessing a franchise tax upon their combined net worth after elimination of inter-corporate accounts. The resulting tax would depend upon group holdings and group activity and would not reflect a payment for individual corporate charters or privileges. For large families of corporations such as those controlled by some of New Jersey’s holding companies, it would virtually eliminate the tax for corporate privileges exercised by any but the parent corporation. Because consolidation would combine allocation factors as well as balance sheet accounts, it would enable corporate families operating on a national or international basis to escape all but a nominal tax in New Jersey. [38 N.J. at 546, 186 A.2d 266]
Plaintiff cannot turn around a reporting practice designed to enhance the State’s. ability to collect appropriate taxes and arbitrarily attempt to restrict the State’s ability to do so.
Plaintiff raises three other issues that can be dealt with rather briefly. First, plaintiff contends that the Director’s use of published financial reports to value plaintiff’s investments in subsidiaries, rather than use of its general ledger *271 accounts, was violative of the Tax Clause of the State Constitution because the Director’s treatment of plaintiff and other taxpayers was not uniform. The Constitution provides that: “Property shall be assessed for taxation under general laws and by uniform rules.” N.J.Const. (1947), Art. VIII, § I, par. 1(a). It is settled that this provision applies only to property taxes and not to excise taxes such as the corporation business tax. Cf. Foosaner v. Taxation Div. Director, 58 N.J. 57, 275 A.2d 129 (1971). There was no proof of a more general assertion by plaintiff that it was denied equal protection of the laws. The validity of a tax imposed on foreign corporations doing business within a state depends on whether the tax is a “fairly apportioned, nondiscriminatory means of requiring such a corporation to pay its just share of the cost of state government upon which it necessarily relies and by which it is furnished protection and benefit.” Roadway Express, Inc. v. Taxation Div. Director, 50 N.J. 471, 491, 236 A.2d 577 (1967), app. dism. 390 U.S. 745, 88 S.Ct. 1443, 20 L.Ed.2d 276 (1968). An assertion of discriminatory assessment under the tax requires “proof of a deliberate or systematic scheme or plan to subject one or more taxpayers to a more onerous burden than that being applied to the generality of taxpayers.” R.H. Macy & Co. v. Taxation Div. Director, supra, 77 N.J.Super. at 179, 185 A.2d 682. The facts adduced in this case demonstrate no such discrimination and, on the contrary, establish that there was no arbitrariness in the Director’s action.
Plaintiff next argues, in a very general way, that even if the Director properly adjusted the taxpayer’s net worth he erred by not also adjusting plaintiff’s allocation factor, as set forth in N.J.S.A. 54:10A-6, to include the proper fractions of its and its subsidiaries’ property, sales and payroll applicable to the adjusted net worth figure. As previously noted, it is inaccurate to equate the Director’s net worth adjustment with a consolidation of plaintiff’s and its subsidiaries’ returns. There is therefore no requirement that the allocation be changed. If there were such a requirement, no proof was offered to support a change in the allocation factor. Cf. Household Finance Corp. v. *272 Taxation Div. Director, 36 N.J. 353, 363, 177 A.2d 738 (1962), app. dism. 371 U.S. 13, 83 S.Ct. 41, 9 L.Ed.2d 49 (1962).
Finally, although plaintiff did not preserve the issue in the pretrial order, it now asserts that the Director’s construction of the term “books of the corporation” to include a taxpayer’s Forms 10-K and other published financial statements should have been promulgated as an administrative rule pursuant to the Administrative Procedure Act, N.J.S.A. 52:14B-1 et seq. This issue was rejected in R.H. Macy & Co. v. Taxation Div. Director, supra. As the court held in that case, there is an adequate legislative standard in this portion of the act for administrative guidance and there was no need for the Director to have first adopted a formal regulation defining the term “books of the corporation.”
For the reasons set forth in this opinion, the Director’s assessment is affirmed in all respects. The Clerk of the Tax Court will enter judgment.

In the years 1975 and 1976 plaintiffs subsidiaries Cities Service Oil Company, Cities Service Research and Development Company, Swiftflite Aircraft Corporation and Chesebrough Building Company also filed New Jersey corporation business tax returns and paid taxes due.