ANDREW, J.T.C.
In this matter plaintiff Bristol-Myers Company (Bristol-Myers) challenges determinations of defendant, Director of the Division of Taxation (Director) with respect to the valuation of plaintiffs investments in its wholly-owned subsidiaries for purposes of measuring plaintiffs tax liability under the New Jersey Corporation Business Tax Act (the act), N.J.S.A. 54:10A-1 et seq. Plaintiff claims a refund for tax year 1976 and disputes the Director’s additional assessment of taxes for 1977.[1]
The act imposes a franchise tax on all nonexempt foreign and domestic corporations “for the privilege of having or exercising its corporate franchise in this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State.” N.J.S.A. 54:10A-2. The tax is computed by adding together prescribed percentages of a net worth tax base[2] and a net income tax base. N.J.S.A. 54:10A-5. It is only the measurement of the net worth tax base that is at issue in this proceeding.
The dispute in this case focuses on whether the Director utilized an appropriate method in measuring a part of Bristol-Myers’ net worth base, i.e., the value of its investments in its subsidiaries. In computing its corporation business tax liability for 1976, plaintiff alleges that it mistakenly reported the value of its investments in subsidiaries on the basis of the equity *138 method of accounting. Contending that it should have reported the value of its subsidiary investments on the basis of the cost method of accounting, plaintiff filed a claim for a refund because the equity method produced a higher value for subsidiary investments than did the cost method. In 1977 plaintiff reported the value of its subsidiary investments utilizing the cost method of accounting. The Director assessed additional taxes for 1977 predicated upon his determination that the taxpayers’ books reflected the value of subsidiary investments under the equity method of accounting which, as in 1976, produced a higher value than did the cost method.
Plaintiff’s expert accounting witness, Dr. Samuel R. Sapienza, summarized the two principal methods of accounting for subsidiary investments. He indicated that under the cost method, the initial cost outlay to the parent corporation would be recorded on the parent corporation’s ledgers as a capital investment. No changes would be made in these figures from year to year unless an additional investment was made, part of the investment was sold or dividends accrued in excess of earnings. Under the equity method, the initial capital investment in a subsidiary is adjusted each year by a pro rata share of the subsidiary’s earnings or losses. Thus, the resulting figure more closely reflects the underlying current value of a subsidiary to a parent corporation.
In this proceeding plaintiff’s corporate books reflected the retained earnings of its subsidiaries. Plaintiff maintains that, according to the cost method of accounting, subsidiary retained earnings are not properly part of its investment in its subsidiaries and, therefore, not part of plaintiff’s net worth. In contrast, defendant argues that subsidiary retained earnings are properly a part of plaintiff’s investments in its subsidiaries, pursuant to the equity method of accounting, therefore, those retained earnings are includable in the calculation of plaintiff’s net worth.
Net worth for the tax years in issue is defined in N.J.S.A. 54:10A-4(d) (hereinafter § 4(d)) as:
*139 ... [T]he aggregate of the values disclosed by the books of the corporation for (1) issued and outstanding capital stock, (2) paid-in or capital surplus, (3) earned surplus and undivided profits, (4) surplus reserves which can reasonably be expected to accrue to holders or owners of equitable shares, not including reasonable valuation reserves, such as reserves for depreciation or obsolescence or depletion, and (5) the amount of all indebtedness owing directly or indirectly to holders of 10% or more of the aggregate outstanding shares of the taxpayer’s capital stock of all classes, as of the close of a calendar or fiscal year____ The foregoing aggregate of values shall be reduced by 50% of the amount disclosed by the books of the corporation for investment in the capital stock of one or more subsidiaries____ [Emphasis supplied]
Although, as plaintiff indicates, the statute does not specify the items that make up a corporation’s net worth, it is clear that net worth includes a corporation’s assets which, in turn, includes investments in subsidiaries. Section 4(d) provides that assets generally are to be valued as “disclosed by the books of the corporation.”
In its analysis of the statutory language in § 4(d) plaintiff contends that while the statute does not prescribe specifically how investments in subsidiaries are to be measured for net worth purposes the statute does, however, describe a 50% reduction for subsidiary investment. As can be seen by the underscored language in the above quotation of § 4(d), the statute permits a deduction of 50% of the “amount disclosed by the books of the corporation for investment in the capital stock of one or more subsidiaries.” Therefore, plaintiff maintains that the statutory emphasis “is on investment in the stock of a subsidiary” and the term “investment” is limited to the cost method of accounting. The Director does not dispute the importance of the specific statutory language but contends that the same language in the context of the statute as a whole directs the use of the equity method of accounting in this case.
Prior to 1968 the Director was permitted to refashion asset values and, in turn, net worth, “in accordance with sound accounting principles” if he was of the opinion that the corporate books did not disclose fair valuations. In 1968 the Legislature amended § 4(d) to preclude the Director from deviating from the values reflected by the corporation’s books relative to a corporation’s investment in the capital stock of subsidiaries. *140 L. 1968, c. 250, § 1, effective August 16, 1968. Subsequent to amendment the relevant portion of § 4(d) provided:
If in the opinion of the [Director] the corporation’s books do not disclose fair valuations the [Director] may make a reasonable determination of the net worth which, in his opinion, would reflect the fair value of the assets, exclusive of subsidiary investments as defined aforesaid, carried on the books of the corporation, in accordance with sound accounting principles, and such determination shall be used as net worth for the purpose of this act. [Emphasis supplied][3]
At the trial of the within matter plaintiff submitted in evidence, without objection, the affidavit of Dorothy Sue Megill, a supervising auditor from the Division of Taxation. This affidavit indicated that since the 1968 legislative changes incorporated in § 4(d), it has been the policy of the Director not to revalue the subsidiary investments of a parent corporation, but to accept the subsidiary’s valuation exactly as reflected on the parent corporation’s books irrespective of whether the equity or cost accounting method is used. Thus, according to the affidavit, “if subsidiaries are valued on the books ... of the corpora *141 tion, and [the] value reflects original investment only,” the Director must accept that value, but “if subsidiaries are valued on the books ... of the corporation and [the] value reflects equity,” then the Director must accept that value for the purposes of computing net worth under the act.
Plaintiff argues that the Director acted improperly in utilizing an equity method of accounting in measuring plaintiffs subsidiary investments because (1) plaintiffs corporate books reflect only the cost method of accounting for investment in its subsidiaries; (2) the equity method of accounting is an impermissible method of valuing subsidiaries under § 4(d); (3) the Director’s policy at issue was not adopted pursuant to the Administrative Procedure Act, N.J.S.A. 52:14B-4(d), and therefore the Director’s determinations are invalid.
On the other hand, defendant contends that his actions, based on a determination that an equity accounting method is reflected by plaintiff’s corporate books, are in accord with the statutory language of § 4(d) and consistent with his policy since the 1968 statutory changes. To support his contention, defendant argues that the holding in Cities Service Co. v. Taxation Div. Dir., 5 N.J. Tax 257 (Tax Ct.1983) is dispositive of plaintiff’s case. In addition, defendant rejects plaintiff’s contention that he must promulgate a rule before determining that plaintiff’s ledgers reflect an equity method of accounting and points to judicial precedent that supports the Director’s authority to implement the statutory language and to interpret broadly the concept of “net worth.”
The key issue in dispute, then, centers on the question: what is “the amount disclosed by the books of” plaintiff Bristol-Myers “for investment in the capital stock of” its subsidiaries for the purpose of computing plaintiff’s net worth under the act. N.J.S.A. 54:10A-4(d). In construing this statutory language, the court must consider whether (under circumstances where the Director can reasonably conclude that cost and equity values are both reflected on plaintiff’s corporate ledgers) the relevant language of § 4(d) requires the Director to adopt *142 plaintiff’s interpretation using only the cost, rather than the alternative equity, method of accounting when valuing the subsidiary investments of a parent corporation.
I
Initially plaintiff asserts that defendant, Director, improperly denied its claim for a refund for tax year 1976 and improperly assessed additional taxes for 1977 because the taxpayer’s books, in fact, in a strict accounting sense reflect the cost method of accounting for its investments in its subsidiaries, not the equity method, therefore the Director is limited in measuring the value of the taxpayer’s subsidiary investments to the cost figures revealed on plaintiff’s corporate books. Defendant responds by indicating, in essence, that it is not the precise method by which plaintiff maintains its books that controls but rather whether the books reveal the equity value of plaintiff’s investments in its subsidiaries.
To support its contention that for the tax years in issue it maintained its corporate books on a cost basis, plaintiff presented a typical entry of one subsidiary on its 1976 corporate books to demonstrate the manner in which it carried all subsidiary investments:
Account Account Beginning Actual Ending
Number Name Balance Debit Credit Balance
024-21-000 Investment in Clairol .00 .00 .00 .01[4]
024-21-001 Capital Stock 1,000,000.00 .00 .00 1,000,000.00
024-21-002 Paid in Capital 19,111,604.00 .00 .00 19,111,604.00
024-21-003 Retained Earnings — 1/1 126,367,927.75 .00 .00 126,367,927.75
024-21-004 Dvds Paid by Subsidiary .00 .00 25,000,000.00 25,000,000.00
024-21-005 Other 2.99 .00 .00 2.99
TOTAL 024-21 146,479,534.75 .00 25,000,000.00 121,479,534.75
*143 Plaintiff’s witness at trial, Albert Lueenti, tax manager for the company, testified that the capital stock and paid-in capital figures represented the original cost outlay of the parent corporation, and that, from year to year, the retained earnings figures were consistently designated as a separate line item.[5] Since the retained earnings were designated as a single equity item, and not fused into the original cost outlay figures, plaintiff maintained that the company’s corporate ledgers reflected a cost, not equity, method of accounting.[6] When questioned as to the inclusion of the retained earnings on the general ledgers, Lueenti responded that such items were noted on the books of the corporation merely to facilitate the filing of state and federal tax returns and compliance with federal securities regulations as well as for management’s convenience in evaluating the subsidiaries’ performance. Thus, plaintiff argues that the Director erred when he applied the equity method of accounting to value the amount of Bristol-Myer’s investment in its subsidiaries for the net worth component of the corporate franchise tax because the corporate ledgers in fact reflect only a cost basis of accounting.
The Director rejected plaintiff’s contention and held that the books of the corporation, with the inclusion of retained earnings reflected equity values. Although there is no explicitly designated single line item that merges retained earnings into the original paid-in cost outlay, the corporate ledgers, by indicating retained earnings, allow the Director to formulate a reasonable conclusion that the ledgers reflect the underlying current value *144 of the subsidiary assets which corresponds to the equity method of accounting.
The root of this controversy becomes apparent when one examines the corporate ledger sheets submitted by plaintiff. It is true, as plaintiff indicates, that the relevant line items designated individually on the ledger as paid-in capital and capital stock investment reflect the original cost basis of acquiring the capital stock of the subsidiary. If the books of the parent corporation denoted the subsidiary’s value by listing only these items, then the Director would be bound by his policy to apply a cost method of accounting. It is also true, however, that the inclusion of retained earnings on the corporate books allows one to deduce the current underlying value of the subsidiary to the parent corporation which is the equivalent of the equity basis of accounting. Plaintiff’s own accounting expert acknowledged that plaintiff’s investment accounts, even though in separate accounting line items, when totalled, reflected taxpayer’s equity value in its subsidiaries. Thus, plaintiff’s corporate ledgers reflect both a cost and equity basis for valuation of a subsidiary investment.
I find that I am in agreement with defendant’s position. It is not the precise method of accounting that plaintiff claims it used that is controlling, rather it is whether the books of the corporation reveal the amount of subsidiary investment by either the cost method or the equity method. There is no language in § 4(d) or the act as a whole that instructs the Director to apply either the cost or equity method of accounting. The statute merely prevents the Director from going beyond the corporate books to arrive at valuations that are not expressly reflected on the corporate books relative to a parent corporation’s investments in its subsidiaries. Moreover, plaintiff concedes that one of the purposes of recording line items in the manner in which it did was to allow corporate management to be kept apprised of the current value of its subsidiary investment.
*145 The statute instructs the Director to determine “the amount [that is] disclosed by the books of the corporation.” Accordingly, the Director must examine the figures reflected on the corporate books relating to subsidiaries and determine the net worth of subsidiary investments in accordance with sound accounting principles. Thus, there is nothing in the statutory language that compels the Director to accept plaintiff’s interpretation of the figures reflected on plaintiff’s corporate books.
II
Plaintiff’s second argument is that the equity method of accounting for subsidiary investment is improper under § 4(d). This is based on the following grounds: (a) the term “investment” as used in § 4(d) is limited to capital outlay as reflected in the cost method of accounting; (b) the equity method of accounting results in more double counting of a corporation’s assets than does the cost method; (c) the equity method effectuates a consolidated return prohibited by the Director’s own regulations.
A.
Plaintiff contends that the clear language of § 4(d) requires the Director to recognize solely the actual investment (meaning capital outlay) in the capital stock of subsidiaries in the calculation of net worth. Therefore, the Director may not consider an item of a subsidiary’s retained earnings and merge these earnings with capital outlay in order to determine the value of a parent company’s investment in a subsidiary. Plaintiff utilizes a dictionary definition to indicate that the term “investment” is limited to capital outlay. In addition, plaintiff’s accounting expert indicated that in his opinion, as an accountant, that the term “investment” is limited to the outlay that an investor makes in acquiring capital stock and that retained earnings would not be included in that outlay. Putting these considerations together, plaintiff contends that the statutory *146 term “investment” then mandates the use of the cost method of accounting. I do not agree.
Plaintiff takes the word “investment” out of its environment and seeks to determine its meaning in isolation. Section 4(d) was enacted by the Legislature in the context of sound accounting principles. The Legislature specifically referred to these principles in the valuation portion of § 4(d). It is without question that the equity method of accounting for subsidiary investment is a sound accounting principle. See Accounting Principles Board Opinion No. 18; Cities Serv. Co. v. Taxation Div. Dir., 5 N.J. Tax 257, 266 (Tax.Ct.1983). There is nothing expressly indicated in the language of the statute that requires the Director to accept one accounting method and to ignore another if both are sound accounting principles. The language does require that the Director determine the amount of the investment as disclosed by the books of the corporation in the milieu of sound accounting principles.
It is noteworthy that the Legislature did not assign a special meaning to be given to the term “investment” in the statute. If the Legislature, presumed to be fully aware of sound accounting principles, had intended to limit the Director to one method of accounting for the measurement of subsidiary investment it would surely have explicitly prescribed that method for use in the valuation of investments in subsidiaries. In the absence of such a legislative directive, this court cannot restrict the meaning of the word “investment” to comport with what plaintiff discerns as the only meaning of the term. Such a position would limit the Director in the use of sound accounting principles.
Moreover, there is the Director’s practical administrative construction of § 4(d) and the Legislature’s acquiescence in that interpretation. The affidavit of Dorothy Sue Megill demonstrates that since 1968 the Director has utilized both the cost and equity methods of accounting in the valuation of subsidiary investments depending, in each individual instance, on what was revealed by the books of the particular corporation. It is a *147 well-settled principle that an administrative construction of a statute with which the Legislature has not interfered over a period of time is proof that the administrative interpretation conforms with legislative intent and thus is accorded great weight. Body-Rite Repair Co. v. Taxation Div. Dir., 89 N.J. 540, 545-546, 446 A2d 515 (1982). “Moreover, the agency’s interpretation of the operative law is entitled to prevail, so long as it is not plainly unreasonable.” Metromedia v. Taxation Div. Dir., 97 N.J 313, 327, 478 A.2d 742 (1984).
Plaintiff also charges that the Director is not following the directive of the statute because the use of the equity method in effect allows the Director to indirectly revalue the assets of the parent corporation. In this case, however, the Director is not attaching a different valuation to the line items, but rather he is recording the exact figures as reported on plaintiff’s corporate books. Whether these figures, as reported by plaintiff, should be interpreted as reflecting a cost or equity accounting method is precisely the question at issue.
Additionally, plaintiff argues that the cost basis should be the proper method of valuation because if plaintiff encountered a loss on its subsidiary investment, it would be deductible only to the extent of its original cost basis. The Director is bound by § 4(d) to ascertain the value of the parent’s subsidiary investment as reflected on the books of the parent corporation. He must look for guidance in implementing the law solely to the intent and purpose of the Legislature in enacting the law in accordance with “sound accounting principles.” Not only are the cost and equity bases of accounting generally accepted principles for valuing a subsidiary investment, but there is also a well-established precept in federal and state tax law that not all gains and losses need be treated in an equal manner. 3B Mertens, Law of Federal Income Taxation (1980), § 22.08a.3 at 57, § 22.08b at 58, § 22.09 at 67; Bittker & Eustice, Fundamentals of Federal Income Taxation of Corporations and Shareholders (4 ed. 1983), ¶ 5.05 at 5-9 to 5-10. Thus, it is irrelevant to the Director’s valuation of a parent’s subsidiary *148 investment for purposes of determining “net worth” under the franchise tax act, if other federal and state tax laws also impinge on the corporation’s profit or loss statement.
B.
Plaintiff further argues that the Director’s use of the equity method is unfair because it results in more double counting of assets than the cost method. Defendant replies that the rationale in Cities Service, supra, is dispositive of this argument. In Cities Service, the taxpayer had kept its books on the cost method and its derivative public documents on the equity method. Once the court decided that the term “books of the corporation” should be broadly construed to include both general ledgers and all public, published documents, it concluded that the use of the equity method was not unfair because any disparity in double counting would be compensated by two 50% deductions for subsidiary investments. See N.J.S.A. 54:10A-4(d),-9 for these deductions. Further, the court stated:
Even if plaintiff had established the existence of some double taxation, there would not necessarily be any inherent defect in the Director’s methodology.
Since the valuation of a franchise to do business is even less precise than the valuation of property for ad valorem property tax purposes, this court gives substantial deference to the Director’s expert administrative judgment in the absence of proof of arbitrary action by him. [Cities Service, 5 N.J. Tax at 269]
The court continued that since the Director had used sound accounting principles and plaintiff’s own published financial reports, there was no arbitrariness that would invalidate the Director’s decision.
Although the present case can be factually distinguished from Cities Service a different result is not required. In that case, the taxpayer utilized both the cost and equity methods of accounting. Here, plaintiff insists that its books reflect the cost method, on the one hand, while the Director wants to use the equity method, on the other. As the court points out in Cities Service, the Director has never been bound by the bookkeeping methods of a corporation but only by the statutory *149 restraint of employing “sound accounting principles.” The Director is required to use these “sound accounting principles” in valuing the “net worth” of the parent corporation, and it would defy credibility and logic if the same principles were to be disregarded solely because a subsidiary investment was involved. In addition, in this case, the Director is using the general ledgers of plaintiff to arrive at his determination. Unless plaintiff can offer proof that the Director’s methods do not conform with sound accounting principles, some overlapping of taxable assets is not necessarily fatal to defendant’s case. As was stated previously, there is no dispute as to what constitutes the “books” of plaintiff’s corporation in this case. Thus, the reasoning in Cities Service supports defendant’s argument advocating the Director’s use of the equity method of valuation as proper and consistent with the governing law.[7]
C.
Plaintiff iterates the same argument as taxpayer in Cities Service, namely, that the use of the equity method contravenes the Director’s own regulations prohibiting consolidated tax returns of parent and subsidiary. See N.J.A.C. 18:7-11.5. Even assuming that consolidation and the equity method result in the same numerical value for investment in a subsidiary, the purpose of the regulation on prohibiting consolidated reporting was to prevent tax avoidance. “It was certainly not intended to limit the Director’s ability to make an appropriate determination of a taxpayer’s net worth.” Cities Service, 5 N.J. Tax at 270. Thus, the fact that the same value *150 may occur when filing a consolidated return does not preclude the Director from utilizing the equity method of accounting.
Ill
Plaintiffs final argument is that the Director’s policy, of choosing the equity method when the cost basis is also apparent from a review of the corporate books, was not adopted pursuant to the Administrative Procedure Act (APA), N.J.S.A. 52:14B-4(d), and therefore the Director’s determinations are invalid. Defendant cites Motor Finance Corp. v. Taxation Div. Dir., 129 N.J.Super. 19, 322 A.2d 180 (App.Div.1974); Brookchester Assocs. v. Taxation Div. Dir., 113 N.J.Super. 570, 274 A.2d 608 (App.Div.1971), certif. den. 58 N.J. 392, 277 A.2d 884 (1971), and R. H. Macy & Co. v. Taxation Div. Dir., 77 N.J.Super. 155, 185 A.2d 682 (App.Div.1962), aff'd o.b. per curiam 41 N.J. 3, 194 A.2d 457 (1963), to affirm the Director’s long standing authority to revalue the net worth of corporations for purposes of the corporation business tax if he was of the opinion that the corporate books did not disclose fair valuations. Defendant then argues that, by analogy, the Director should also in this case, be able to implement the statutory language of the act and choose an accounting method reflected on plaintiff’s general ledgers.
The cases selected by defendant to support its argument that the Director’s findings are valid all deal with instances where the Director disagreed with the valuation as reported by the corporation and in its place, according to the explicit directive of the statute, revalued the corporation’s assets to denote fair valuations. Since 1968, however, the statute has expressly denied the right of the Director to revalue any subsidiary investment held by the parent corporation. Thus, these cases are not dispositive of the issue in the present case.
Defendant also notes that plaintiff in all the prior proceedings leading to the trial of its appeal failed to argue that the Director’s application of the equity value to plaintiff’s subsidiary investment was a rule requiring adoption under the APA. *151 Lastly, defendant points out that a similar objection by the taxpayer in Cities Service, supra, was rejected because “there [was] an adequate legislative standard in ... the act for adminstrative guidance and there was no need for the Director to have first adopted a formal regulation.” 5 N.J.Tax at 272; accord R. H. Macy & Co., supra.
Metromedia, Inc. v. Taxation Div. Dir., supra, enumerates the considerations that must guide the court in determining if the Director’s policy in this case was equivalent to rule-making:
... if it appears that the agency determination ... (1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is, prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy. These relevant facts can, either singly or in combination, determine in a given case whether the essential agency action must be rendered through rule-making or adjudication. [97 N.J. at 331, 478 A.2d 742]
Even assuming that plaintiff’s argument was timely proffered, upon examination of the above guidelines, it must fail. The Director’s policy, in this case, (1) is designed to operate both retrospectively and prospectively, (2) prescribes a legal standard that is clearly inferable from the statute’s directive of “sound accounting principles” as the predominant tenet, (3) was expressed previously as the Director’s policy, (4) does not constitute a radical departure from customary practice, and (5) reflects an administrative policy interpreting the clear intent and purpose of the statute. In weighing these considerations, I conclude that the Director was not required to adopt a rule or regulation. The Director must be given broad discretion restrained by “sound accounting principles” to determine a fair value for the taxpayer’s net worth. Id. at 324, 478 A.2d 742. Any reasonable determination of the Director should be given great deference. Id. at 327, 478 A.2d 742.
*152 Based on the foregoing, the Clerk of the Tax Court is directed to enter judgment affirming the Director’s determinations for tax years 1976 and 1977.

 In 1979, plaintiff filed seven refund claims for the tax years 1971 through 1977. In Bristol-Myers Company v. Taxation Div. Dir., 3 N.J.Tax 451 (Tax Ct.1981), then Judge Conley of this court held that the refund claims for 1971 through 1975 were not timely filed and were therefore dismissed leaving only for subsequent determination the propriety of the Director’s actions for tax years 1976 and 1977.

 Subsequent to the taxable periods in question in this case the Legislature enacted a phased-out repeal of the "net worth” provisions. See L. 1982, c. 55.

 The Director has adopted a number of regulations which follow the statutory directive that preclude the Director from revaluing a corporation's subsidiary investments. These provisions are as follows:

Parent must report book value of subsidiary corporation

(a) For any subsidiaries meeting the definition of a subsidiary under subsections (a) and (b) of Section 4.11 (Subsidiary corporation, varying definitions) of this chapter, the parent corporation's book value for that subsidiary’s stock must be reported in computing the parent corporation’s net worth tax liability under the Act.
(b) No revaluation of the parent corporation's net worth is permitted for the stock of these subsidiaries. [N.J.S.A. 18:7-4.14; emphasis supplied]

Valuation of subsidiaries

(a) The investment by a taxpayer in the stock of a corporation meeting the definition of subsidiary under Section 4.11 (Subsidiary corporation; varying definitions) of this Chapter, requires the taxpayer to report the book value of his investment in computing the parent company's net worth tax liability under the Act.
1. No revaluation of the parent company's net worth is permitted for these stock investments.
2. For valuation of other stock investments, see SEction 6.7 (Valuation of securities; how computed) of this Chapter. [N.J.S.A. 18:7-6.4; emphasis supplied]

 Plaintiffs tax manager testified that this ending balance reflecting .01 was probably inserted by an early computer system as "a way of keeping the account open” and that from year to year this line item is carried over without any changes.

 Plaintiff submitted a 1975 ledger to show that the relevant line items were entered in the same manner every year on the company’s corporate ledgers. Plaintiff's expert witness testified at trial that the general ledger for 1977 was kept in the same manner although no actual general ledger was submitted in evidence for the 1977 tax year in dispute.

 Plaintiff's accounting expert testified that plaintiff’s corporate books reflected the cost method of accounting respecting subsidiary investment because the separate account item of retained earnings was not merged with paid-in capital or capital stock at the start of a new accounting year as is technically required in order to be considered the equity method of accounting.

 The taxpayer also recognized that the equity method was a sound accounting principle for interpreting its corporate books. Its appeal for the 1976 tax year for a refund is based on the theory that it erred in using the equity method of accounting for its subsidiary investments. Then, when the Director continued to record the subsidiary investment in 1977 in the same manner, plaintiff paid the additional assessment under protest and requested a refund, claiming that it was now using the cost accounting principle to report its subsidiary investment. During both years, however, plaintiff made no changes in the method of keeping its general ledgers.